IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| TREVIO HEAD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 316-039 |
| | ) | |
| FRED GAMMAGE, Deputy Warden | ) | |
| of Security, Telfair State Prison; | ) | |
| WILLIAM DANFORTH, Warden, | ) | |
| Telfair State Prison; ROBERT TOOLE, | ) | |
| Field Operations Officer; STEVE | ) | |
| UPTON, Classification; TERENCE | ) | |
| KILPATRICK; SGT. MIXON; RODNEY | ) | |
| MCCLOUD, Prison Official; and PHILLIP | ) | |
| HALL, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff, an inmate at Telfair State Prison ("TSP") in Helena, Georgia, brought this case pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). The Court **REPORTS** and **RECOMMENDS** Defendants' motion to dismiss be **GRANTED IN PART** and **DENIED IN PART** (doc. no. 46), all official capacity claims against Defendants be **DISMISSED**, and all claims for monetary relief against Defendants be **DISMISSED**.

**I.     BACKGROUND**

With respect to the remaining defendants in this action, Plaintiff alleges the following facts.

Defendants have allowed inmates to form gangs, which has caused numerous stabbings and beatings between inmates. (Doc. no. 1, p. 2; doc. no. 17, p. 2, 4; doc. no. 19, pp. 7-8.) When TSP was placed on lockdown multiple times after violence erupted, Defendants informed gang leaders what to do and coordinated gang leaders' ability to inform and instruct their members how to respond to the escalating violence. (Doc. no. 1, p. 7; doc. no. 13, pp. 2-3, 5; doc. no. 19, p. 2.) In one instance, Defendants Kilpatrick and Mixon brought a leader of the Blood Gang and a leader of the Crip Gang into Plaintiff's dormitory to instruct their members. (Doc. no. 19, p. 2.) Defendants have also allowed correctional officers to smuggle in contraband such as knives and cell phones for gang members to use. (Doc. no. 1, p. 7.)

As a result of the violence, TSP has repeatedly been placed under lockdown, and a "shakedown" has resulted in the removal of sixty-eight knives. (See doc. no. 1, p. 7; doc. no. 13, p. 2; doc. no. 16, p. 1.) Defendant Toole allegedly addressed Plaintiff's entire dorm in a speech identifying gang activity as the cause of the lockdowns. (Doc. no. 15, p. 4.) Despite Defendants' attempts to address these issues, violence at TSP continues to escalate and attacks between gangs continue to occur on a frequent basis. (See, e.g., doc. no. 17, p. 2.) Indeed, Warden Hall admitted he could not separate non-gang affiliated inmates because the gangs were so prevalent and "mixed in." (See doc. no. 20, p. 3.) As a result of this violence, Plaintiff is "living in fear." (Doc. no. 10, p. 7.)

Plaintiff filed three grievances regarding the allegations in his complaint. He filed grievance number 208624 on December 14, 2015, alleging the Georgia Department of Corrections ("GDOC") "has committed treason" and aided "radical groups with foreign policies and militant forces." (Doc. no. 46-5, Attch. C.) Plaintiff further alleged the GDOC "render[ed] their authority to them and allow[ed] them to control security," making Plaintiff "no longer safe." (Id.) On December 21, 2015, Warden Danforth evaluated and denied grievance 208624 on the ground Plaintiff provided no evidence to support his allegations. (Id.) On February 17, 2016, the Central Office denied his appeal. (Id.)

Plaintiff filed grievance number 209269 on December 15, 2015, alleging Defendants Toole, Upton, Danforth, and Gammage "acted with omission that has caused him to suffer from a deliberate indifference." (Doc. no. 46-6, Attch. D.) Plaintiff further alleged these Defendants allowed violent groups to "govern themselves," "run quantlets," and commit "acts of war and violence as those carried out on 12-1-15, 12-2-15, and 12-3-15," which jeopardized Plaintiff's safety. (Id.) On December 21, 2015, Warden Danforth evaluated and denied grievance 208624 on the ground Plaintiff provided no evidence to support his allegations. (Id.) On September 27, 2016, the Central Office denied his appeal. (Id.)

Plaintiff filed grievance number 214879 on March 16, 2016, alleging on March 3, 2016 between 7:30 and 8:30 p.m., two Crip gang members entered room 117 in B2 and stabbed a group of Blood gang members in the face with a knife. (Doc. no. 46-7, Attch. E.) Plaintiff further alleged another violent altercation between Bloods and Crips occurred on March 4, 2016 in Dorm B-1, and prison officials used gang leaders to "run security" on

3

March 9, 2016. (Id.) Plaintiff blamed Homer Bryson for not providing "security or protection from these terrorists." (Id.) On December 21, 2015, Warden Hall evaluated and denied grievance 214879 on the ground Plaintiff was not involved in either altercation and provided no evidence to substantiate his allegations. (Id.) Plaintiff did not appeal the denial of grievance number 214879. (Doc. no. 46-2, Ex. 1, ¶ 19.) Plaintiff filed no other grievances regarding the incidents in his complaint. (Id., ¶ 20.)

## II.   DISCUSSION

### A.   Plaintiff's Exhaustion of Administrative Remedies.

#### 1.   The Legal Framework

Where, as here, Defendant has filed a motion to dismiss based on failure to exhaust administrative remedies, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions. First, the Court looks to the factual allegations made by both parties, taking the plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust administrative remedies, Defendant's motion will be granted. Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted), *cert. denied*, 555 U.S. 1074 (2008)).

If the complaint is not subject to dismissal at the first step, then at step two the Court makes specific findings to resolve the disputed factual issues, with Defendant bearing the burden of proving Plaintiff has failed to exhaust his administrative remedies. Id. Based on its findings as to the disputed factual issues, the Court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should

be granted. Id. Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005).

Additionally, "implicit in [the exhaustion] requirement is an obligation on the prisoner to provide those officials who will pass upon the grievance all the relevant

5

information he has, including the identity of any officials he thinks have wronged him and any witnesses." Brown v. Sikes, 212 F.3d 1205, 1207-08 (11th Cir. 2000); see also Sewell v. Ramsey, No. CV 406-159, 2007 WL 201269, at *3 (S.D. Ga. Jan. 24, 2007) ("a grievance satisfies § 1997e(a)'s exhaustion requirement so long as it provides prison officials with enough information to investigate and address the inmate's complaint internally") (quoting Kikumura v. Osagie, 461 F.3d 1269, 1285 (10th Cir. 2006)).  This does not require a prisoner to provide information he does not have or cannot reasonably contain, but it does require a prisoner to include "relevant information about his claims, including the identity of those directly involved in the alleged deprivation[ ]."  Brown, 212 F.3d at 1210; see also Thompson v. Corr. Corp. of Am., No. CV 510-069, 2011 WL 6941680, at *3 (S.D. Ga. Aug. 30, 2011), report and recommendation adopted, No. CV 510-069, 2012 WL 12682 (S.D. Ga. Jan. 3, 2012), aff'd, 485 F. App'x 345 (11th Cir. 2012) ("Plaintiff need not have used any particular words or phrases in his informal grievances.  Nevertheless, there must be some assertion set forth in a grievance, whether informal or formal, which would alert the person against whom the grievance was filed that the inmate's complaint concerned him or her.").

Because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit.  Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000).  Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective."  Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326.  Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies

are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

### 2. The Administrative Grievance Procedure.

Because the dates of the alleged incidents are between November 2015 and July 2016, the administrative grievance procedure applicable in this case is governed by the version of the Georgia Department of Corrections' Standard Operating Procedure ("SOP") IIB05-0001, which became effective on July 20, 2015.  (See doc. no. 46-3, Attch. A.)  The administrative remedies procedure commences with the filing of a grievance with the inmate's counselor. SOP IIB05-0001 § VI(D)(1)-(3).  The inmate's counselor forwards the grievance to the grievance coordinator, who must screen the grievance to determine whether to accept it or recommend the Warden reject it.  Id. § VI(D)(3), (5)(a).  The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the grievance.  Id. § VI(D)(4).  The timeliness requirements of the administrative process may be waived upon a showing of good cause.  See id. § VI(D)(5)(b)(2).  Should the grievance coordinator recommend rejection, the SOP requires the Warden give a response to the inmate's counselor to deliver to the inmate within forty calendar days of its original receipt; a onetime ten-calendar-day extension may be granted. Id. § VI(D)(7).

If the inmate is not satisfied with the Warden's response to the grievance, he has seven calendar days from the receipt of the response to file an appeal to the Central Office of the Commissioner; the Office of the Commissioner or his designee has one hundred calendar days after receipt of the grievance appeal to respond.  Id. § VI(E)(2), (7).  The grievance

procedure is terminated upon the issuance of a response from the Commissioner's Office. See id. § VI(E).

### 3. Plaintiff Properly Exhausted His Administrative Remedies.

While Plaintiff failed to exhaust the administrative grievance process as to grievance 214879 because he did not appeal its denial, (see doc. no. 46-7, Attch. E), Plaintiff did follow the proper grievance procedure as to grievances 208624 and 209269. (See doc. no. 46-5, Attch. C; doc. no. 46-6, Attch. D.)  Defendants contend, however, that grievances 208624 and 209269 lack the specificity required to exhaust his claims.

"While a prisoner is not required to name each defendant in a grievance in order to properly exhaust a claim, he is required to 'provide as much relevant information as he reasonably can in the administrative grievance process.'" Williams v. Barrow, 559 F. App'x 979, 986 (11th Cir. 2014) (citing Jones v. Bock, 549 U.S. 199, 219 (2007) and Brown, 212 F.3d at 1207).  Indeed, "[t]he critical function of the grievance process is that it provides the institution with notice of a problem such that they have an opportunity to address the problem internally." Toenninges v. Georgia Dep't of Corr., 600 F. App'x 645, 649 (11th Cir. 2015).

Here, Plaintiff's grievances satisfy the minimal specificity requirement.  Although Plaintiff does not specify each Defendant by name or list specific dorms, he does provide enough information for Defendants to address the problem internally.  See id.  In his grievances, Plaintiff informs Defendants that gangs have been ceded authority to "run quantlets," run security and classification, and move inmates within housing units without repercussion.  Moreover, Plaintiff specifies dates and acts of violence in grievance 209269.

These allegations are almost identical to his allegations in his complaint and numerous other filings.  Although it would have been preferable for Plaintiff to provide more information, including all of Defendants' names, he provided "as much relevant information as he reasonably [could] in the administrative grievance process," which was all that was required.  Williams, 559 F. App'x at 986.

Accordingly, as Plaintiff properly exhausted the administrative process, Defendants' motion to dismiss cannot be granted on the basis of exhaustion.

**B.     Legal Standard for Rule 12(b)(6) Motion.**

In considering a motion to dismiss under Rule 12(b)(6), the court tests the legal sufficiency of the complaint, not whether the plaintiff will ultimately prevail on the merits. Adinolfe v. United Tech. Corp., 768 F.3d 1161, 1168 (11th Cir. 2014).  The Court must accept as true all facts alleged in the complaint and draw all reasonable inferences in Plaintiff's favor. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); American Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1288 (11th Cir. 2010).  To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations in the amended complaint must "state a claim for relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  While Rule 8(a) of the Federal Rules of Civil Procedure does not require

9

detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. An amended complaint is insufficient if it "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or if it "tenders 'naked assertions' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 555, 557). In short, the amended complaint must provide a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)).

With these principles in mind, the Court turns its attention to the remaining arguments in the motion to dismiss that do not relate to the exhaustion issue.

### C. Plaintiff States a Valid Claim of Deliberate Indifference to Safety.

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828 (1994) (citations omitted). To establish such a claim, a prisoner "must allege facts sufficient to show (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Lane v. Philbin, 835 F.3d 1302, 1307 (11th Cir. 2016) (internal quotations omitted). These three elements are evaluated in part by an objective standard and in part by a subjective standard. See Caldwell v. Warden, FCI Talladega, 748 F.3d 1090, 1099 (11th Cir. 2014). As the Eleventh Circuit explained,

> When examining the first element—a substantial risk of serious harm—the court uses an objective standard. The second element—the defendant's deliberate indifference to that risk—has two components: one subjective and one objective. To satisfy the subjective component, a plaintiff must produce evidence that the defendant actually (subjectively) kn[ew] that an inmate [faced] a substantial risk of serious harm. To satisfy the objective component,

> a plaintiff must produce evidence that the defendant disregard[ed] that known risk by failing to respond to it in an (objectively) reasonable manner.

Id. (internal citations and quotations omitted).

Because "a risk of harm to some degree always exists by the nature of its being a [prison]," not every condition rises to the level of an Eighth Amendment violation. Purcell ex rel. Estate of Morgan v. Toombs Cty., Ga., 400 F.3d 1313, 1323 (11th Cir. 2005). However, "confinement in a prison where violence and terror reign is actionable." Harrison v. Culliver, 746 F.3d 1288, 1299 (11th Cir. 2014) (quoting Purcell, 400 F.3d at 1320).

In addition, "[a] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Lane, 835 F.3d at 1308. However, "[i]nferences from circumstantial evidence . . . can be used to show that a prison official possessed the necessary knowledge." Id.

Here, Plaintiff alleges sufficient facts to state a plausible claim of Defendant's deliberate indifference to a substantial risk of serious harm. Plaintiff alleges Defendants have allowed widespread gang activity, including ceding authority to gang leaders to coordinate security, which in turn has caused numerous stabbings and beatings between inmates. (Doc. no. 1, pp. 2, 7; doc. no. 13, pp. 2-3, 5; doc. no. 17, p. 2, 4; doc. no. 19, pp. 2, 7-8.) In fact, gang activity is purportedly so severe that the prison is unable to separate gang members from non-gang members. (See doc. no. 20, p. 3.) Numerous weapons have been confiscated, including sixty-eight knives. (See doc. no. 1, p. 7; doc. no. 13, p. 2; doc. no. 16,

p. 1.)  Despite this confiscation, violence continues to escalate.  (See, e.g., doc. no. 17, p. 2.)  These conditions are substantially similar to those the Eleventh Circuit held were sufficiently serious to violate the Eighth Amendment in Lane.  835 F.3d at 1307-08.  Thus, Plaintiff has satisfied the first deliberate indifference element.

Moreover, Plaintiff has alleged specific facts showing Defendants Kilpatrick, Mixon, and Toole had subjective knowledge of the dangers of assaults by gang members.  (See doc. no. 19, p. 2; doc. no. 15, p. 4.)  As to the other Defendants, it can be reasonably inferred they were aware of these circumstances alleged by virtue of their positions as prison officials concerned with the security and day-to-day operations at TSP.  See Rhiner v. Jones, No. 2:15-CV-14319, 2016 WL 5024170, at *3 (S.D. Fla. Sept. 20, 2016) (holding knowledge could be inferred because of Defendants' positions as Warden and Assistant Warden).  Thus, Plaintiff has satisfied the second deliberate indifference element.

Finally, Plaintiff has alleged sufficient facts to establish causation.  Plaintiff clearly connects Defendants' actions and inactions to the excessively dangerous conditions at TSP.  (See, e.g., doc. no. 1, pp. 2, 7; doc. no. 13, pp. 2-3, 5; doc. no. 17, p. 2, 4; doc. no. 19, pp. 2, 7-8.)  Thus, Plaintiff has satisfied the third deliberate indifference element.

Accordingly, Defendants' motion to dismiss for failure to state a claim upon which relief can be granted must fail.

### D. Plaintiff Alleges Facts Sufficient to Survive Dismissal on the Basis of Qualified Immunity.

#### 1. Qualified Immunity Standard

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). A defendant carries the initial burden of showing that the contested actions fall within his discretionary authority, then the burden shifts to the plaintiff to show (1) violation of a constitutional right; and (2) the right violated was clearly established at the time. Gilmore v. Hodges, 738 F.3d 266, 272 (11th Cir. 2013) (citing Pearson, 555 U.S. at 232). Courts may assume for the sake of argument that a constitutional violation occurred and grant summary judgment based on a finding that the right was not clearly established. Pearson, 555 U.S at 236.

A government official acts within his discretionary authority when he was "(a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). To satisfy the first prong, the defendant "must have been performing a function that, *but for* the alleged constitutional infirmity, would have fallen within his legitimate job description." Id. at 1266 (emphasis in original). To satisfy the second prong, the defendant must be executing his job-related function "in an authorized manner." Id.

13

Plaintiff can demonstrate that the right violated was clearly established in three ways. First, the conduct involved in the case may "so obviously violate[ ] th[e] constitution that prior case law is unnecessary." Terrell v. Smith, 668 F.3d 1244, 1257 (11th Cir. 2012). Second, Plaintiff may show that "a materially similar case has already been decided" at the time of the incident by the United States Supreme Court, the Eleventh Circuit, or the Georgia Supreme Court. Terrell, 668 F.3d at 1255. This category consists of cases where "judicial precedents are tied to particularized facts." In assessing whether previous cases clearly establish the law, Courts ask whether the factual scenario that the official faced "is fairly distinguishable from the circumstances facing a government official" in a previous case. Id. at 1256 (citing Vinyard v. Wilson, 311 F.3d 1340, 1352 (11th Cir. 2002)). If so, the cases are not materially similar and, thus, provide insufficient notice to the official to clearly establish the law. Terrell, 668 F.3d at 1256.

Third, Plaintiff can point to a "broader, clearly established principle [that] should control the novel facts [of the] situation." Id. "[S]ome broad statements of principle in case law are not tied to particularized facts and can clearly establish law applicable in the future to different sets of detailed facts." Id. (citing Vinyard, 311 F.3d at 1351). However, the principle must be established with "obvious clarity" by the United States Supreme Court, the Eleventh Circuit, or the Georgia Supreme Court case law at the time of the alleged violation so that "every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." Terrell, 668 F.3d at 1256.

### 2. The Complaint Sufficiently Alleges Violation of a Clearly Established Constitutional Right.

Here, even assuming Defendants can show they were acting within the scope of their discretionary authority, Defendants' actions as alleged of allowing such prevalent gang activity that Plaintiff lives in constant danger of violence would violate a constitutional right clearly established at the time of the incident.  See, e.g. Lane, 835 F. 3d at 1307-08 (holding presence of substantial gang population, numerous stabbings and beatings, and widespread possession of weapons sufficient to establish actionable Eighth Amendment claim); Harrison, 746 F.3d at 1299 ("confinement in a prison where violence and terror reign is actionable"); Marsh v. Butler Cnty., Ala., 268 F.3d 1014, 1033 & n.12 (11th Cir. 2001), *abrogated on other grounds by* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 561-63 (2007) (holding law clearly established that excessively unsafe jail conditions violate Eighth Amendment).  Defendants cite no case law to the contrary.  (See doc. no. 46-1, p. 23.)  Accordingly, Defendants' motion to dismiss on qualified immunity grounds must fail.

### E. Plaintiff May Not Sue Defendants for Monetary Damages or Injunctive Relief.

The only other bases for dismissal argued by Defendants relate to purely legal issues as to the type of relief sought by Plaintiff for all of his claims.  In particular, Plaintiff seeks an award of monetary damages and injunctive relief against each Defendant in their official and individual capacities.  (See doc. no. 1.)  Defendants argue that any claims for monetary damages are barred and the complaint fails to state a claim for injunctive relief.  (Doc. no. 46-1, pp. 18-22.)  In response, Plaintiff claims Defendants are "not immune" because they

15

committed "an illegal act, in violation of their own policy, and the unofficial custom. . . ." (Doc. no. 52, p. 6.)

### 1. Official Capacity Claims.

The Eleventh Amendment bars official capacity claims against state prison officials for money damages. Kentucky v. Graham, 473 U.S. 159, 169 (1985). Likewise, the Eleventh Amendment bars a § 1983 official capacity claim for injunctive relief. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-02 (1984) ("And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief.") (citing Cory v. White, 457 U.S. 85, 91 (1982)); see also Smith v. Dekalb County Jail, No. 1:13-cv-1629, 2014 WL 129509, at * 3 (N.D. Ga. Jan. 14, 2014) ("[T]he Eleventh Amendment bars a § 1983 federal action against the State of Georgia, whether for damages or injunctive relief." (citations omitted)). Therefore, Plaintiff's official capacity claims for monetary and injunctive relief fail as a matter of law and should be dismissed.

### 2. Individual Capacity Monetary Damages Claim.

42 U.S.C. § 1997e(e) provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).

Plaintiff has not alleged a physical injury from being housed with various gang members at TSP, only a mental or emotional injury from living in fear of future injury. Therefore, Plaintiff can only seek nominal damages for his claims. See Smith v. Allen, 502 F.3d 1255,

1271 (11th Cir. 2007) abrogated on other grounds by Sossamon v. Texas, 563 U.S. 277 (2011) (finding Plaintiff could still seek nominal damages for constitutional claims).

### 3. Individual Capacity Injunctive Relief.

Defendants contend Plaintiff is not entitled to an injunction against Defendants in their individual capacities because his request is overbroad. (See doc. no. 46-1, pp. 20-22.) However, the issue of injunctive relief is an issue best left for trial and final judgment. Therefore, Plaintiff's individual capacity claims for injunctive relief should not be dismissed at this early juncture.

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendants' motion to dismiss be **GRANTED IN PART** and **DENIED IN PART** (doc. no. 46), all official capacity claims against Defendants be **DISMISSED**, and all claims for monetary relief against Defendants be **DISMISSED**.

SO REPORTED and RECOMMENDED this 20th day of July, 2017, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA